**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| STEVEN G. BOLLING, | : |
| Plaintiff, | : CIVIL ACTION NO. 08-3183 (MLC) |
| v. | : **MEMORANDUM OPINION** |
| GEORGE W. HAYMAN, et al., | : |
| Defendants. | : |

**COOPER, District Judge**

The plaintiff, Steven Bolling ("Bolling"), brings this action pursuant to 42 U.S.C. § ("Section") 1983 alleging violations of his First Amendment, Eighth Amendment, and Fourteenth Amendment rights. (Dkt. entry no. 10, Am. Compl. at 7.) The defendant Correctional Medical Services ("CMS") now moves for summary judgment in its favor for failure to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). (Dkt. entry no. 60, CMS Br. at 2.) The plaintiff opposes the motion. (Dkt. entry no. 65, Pl. Br.) The Court determines the motion on the briefs without an oral hearing, pursuant to Federal Rule of Civil Procedure ("Rule") 78(b). For the reasons stated herein, the Court will grant the motion.

**BACKGROUND**

The plaintiff is currently incarcerated in New Jersey State Prison ("NJSP"). (Am. Compl. at 1.) He commenced this action in

June 2008 against George Hayman, Peter Roselli, Michelle Ricci, Gary Sheppard, Administrator Pugh (first name unknown), Ellen Kater, Dr. Etelman, Dr. Don Gibbons, CMS, and Correctional Behavioral Services.  (Dkt. entry no. 1, Compl.; Am. Compl. at 2-4.)  The plaintiff later amended the Complaint to add University of Correctional Health Care and New Jersey University of Medical and Dentistry.  (Dkt. entry no. 77, Second Am. Compl.)  The Court initially dismissed the Complaint in August 2008.  (Dkt. entry no. 5, 8-14-08 Order.)  The plaintiff filed an Amended Complaint in November 2008.  (Am. Compl.)  The Court, noting that the Amended Complaint was factually conflicting and obscure, ordered the plaintiff to file a clarifying supplement to his Amended Complaint.  (Dkt. entry no. 18, 3-3-09 Order.)  The plaintiff filed a supplement to the Amended Complaint on May 15, 2009.  (Dkt. entry no. 39, Supplement.)  The Court permitted the plaintiff to file a final Amended Complaint to add a new defendant in December 2009.  (Dkt. entry no. 63, 12-11-09 Order.)

The plaintiff alleges that the defendants are each personally involved in the New Jersey Department of Corrections ("NJDOC") customs, practice, and unspoken policy of disregarding inmates' rights.  (Am. Compl. at 4-5.)  The plaintiff alleges that while confined, the defendants failed to properly administer and prescribe adequate medical and psychiatric care.  (Id. at 5.)  The plaintiff's specific allegations as to CMS are that CMS

failed to supervise its employees in the medical and psychiatric department to ensure that his medical needs were met. (Id. at 4.) He states that CMS failed to ensure that he received requested medical help and prescribed medications. (Id. at 6.) He further states that CMS allowed medical professionals to distribute "adulterated" medicine to him. (Id.)

The plaintiff alleges numerous instances in which he claims he was denied adequate medical and psychiatric care. (Id. at 7-13.) He contends that he was placed into the mainstream general population at NJSP where he did not receive any meaningful psychiatric aid. (Id. at 6.) He contends that he consistently sought legal help and filed grievances regarding the wrongdoing by prison staff. (Id. at 5.) He states that prison officials failed to investigate his complaints and simply denied them without investigation. (Id.)

He states that his psychiatric illnesses were exacerbated while he remained in the general population prison setting and that he was taken off his medications. (Supplement at 8.) The plaintiff next alleges that between June and September of 2006, he received no licensed psychological help. (Am. Compl. at 10.)

The plaintiff alleges that in January 2007, his psychiatric and pain medications were decreased. (Supplement at 12.) He alleges that his medical treatment resumed in May 2007, but his medicine was distributed in crushed form. (Id.) He states that

3

his pain medicine was decreased again in June 2007.  (Id. at 13.) He states that his medical treatment resumed in July 2007.  (Id.) The plaintiff then alleges that he stopped receiving medical treatment in October 2007.  (Id. at 10.)  He alleges that he requested help at this point.  (Id.)  He alleges that his pain medication was cancelled in April 2008 and he requested help at this time.  (Id.)  He alleges that in June 2008, his medical treatment resumed.  (Id.)

## DISCUSSION

**I.    Motion for Summary Judgment**

**A.    Summary Judgment Standard**

The standard for a motion for summary judgment is well-settled and will be briefly summarized here.  Rule 56(c) provides that summary judgment is proper if the pleadings, the discovery and disclosure materials, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  In making this determination, the Court must "view[] the record in the light most favorable to the non-moving party and draw[] all inferences in that party's favor."  United States ex rel. Josenske v. Carlisle HMA, Inc., 554 F.3d 88, 94 (3d Cir. 2009) (citing Abramson v. William Patterson Coll., 260 F.3d 265, 276 (3d Cir. 2001)).

### B. Prison Litigation Reform Act

The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).[1] The exhaustion of all administrative remedies is mandatory, even if (1) the prisoner believes they are ineffective, or (2) the available administrative process cannot grant the desired remedy. Booth v. Churner, 532 U.S. 731, 739-41 (2001); see Porter v. Nussle, 534 U.S. 516, 524 (2002) (explaining that (1) "exhaustion in cases covered by [section] 1997e(a) is . . . mandatory", (2) "[a]ll 'available' remedies must . . . be exhausted", and (3) the remedies need "not meet federal standards, nor must they be 'plain, speedy, and effective.'"). Therefore, to comply with the PLRA, a prisoner must properly exhaust administrative remedies as a precondition to bringing a federal claim in federal court, or risk procedural default. Warren v. Pennsylvania, 316 Fed.Appx 109, 112 (3d Cir. 2008); Bailey-El v. Fed. Bur. of Prisons, 246

---

[1] Failure to exhaust administrative remedies is an affirmative defense under the PLRA. Jones v. Bock, 549 U.S. 199, 215 (2007). Defendants "have the burden of pleading and proving the defense in a motion for summary judgment or at trial." Kounelis v. Sherrer, No. 04-4714, 2005 WL 2175442, at *6 (D.N.J. Sept. 6, 2005).

Fed.Appx. 105, 107 (3d Cir. 2007); Jackson v. Ivers, 244 Fed.Appx. 508, 512 (3d Cir. 2007).

The PLRA's exhaustion requirement applies to all actions brought by inmates "about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S. at 532. The Court, in determining whether a prisoner has properly exhausted administrative remedies, must evaluate the prisoner's compliance with the prison's administrative regulations governing inmate grievances, and the waiver, if any, of such regulations by prison officials. Jackson, 244 Fed.Appx. at 512; Spruill v. Gillis, 372 F.3d 218, 222 (3d Cir. 2004).[2] "[C]ompliance with the administrative remedy scheme will be satisfactory if it is substantial." Nyhuis v. Reno, 204 F.3d 65, 77-78 (3d Cir. 2000).

The PLRA exhaustion requirement contemplates that the prisoner must bring a grievance to the attention of the appropriate prison official so that the official has an opportunity to respond to the grievance before the prisoner resorts to the courts. Spruill, 372 F.3d at 227; see Porter, 534 U.S. at 524-25 (indicating PLRA "afford[s] corrections officials time and opportunity to address complaints internally before

---

[2] The PLRA's exhaustion requirement applies to grievance procedures set forth in a New Jersey Department of Corrections ("NJDOC") inmate handbook, even if that handbook is not formally adopted by a state administrative agency. Concepcion v. Morton, 306 F.3d 1347, 1355 (3d Cir. 2002).

6

allowing the initiation of a federal case."). Moreover, after filing an initial complaint, the prisoner must carry the grievance through any available appeals process. Nyhuis, 204 F.3d at 67. Thus, a prisoner has not exhausted administrative remedies until the prisoner has pursued a grievance through each level of appeal available within the prison system. Spruill, 372 F.3d at 232.

A failure to exhaust administrative remedies, however, may be excused in some circumstances. Ramos v. Smith, No. 04-249, 2005 WL 3054291, at *5-*6 (E.D. Pa. Nov. 14, 2005). For example, a failure to exhaust administrative remedies may be excused if "prison officials precluded [the prisoner] from filing administrative requests or appeals so that [the] [d]efendant is estopped from raising exhaustion as an affirmative defense." See id. at *6. Also, if "the procedures were unclear," that may create "special circumstances that justify excusing the exhaustion requirement." See id.

**II. Section 1983 Claim**

CMS does not address the merits of the plaintiff's claim but rather alleges that he failed to exhaust administrative remedies prior to bringing this action. (CMS Br. at 9.) The Court notes, however, that even if the plaintiff had properly exhausted his administrative remedies, his Section 1983 claim would still fail.

7

CMS provided medical services for the NJDOC from April 1996 through September 30, 2008. (Id.) CMS stopped providing mental health services for the NJDOC in December 2004. (Id. at 8.) Respondeat superior cannot be a basis for Section 1983 liability. See Durmer v. O'Carroll, 991 F.2d 64, 69 n.14 (3d Cir. 1993). As such, CMS cannot be held liable for the actions of its employees. Natale v. Camden County Corr. Facility, 318 F.3d 575, 583 (3d Cir. 2003). CMS may be held liable, however, if the plaintiff "provide[s] evidence that there was a relevant [CMS] policy or custom, and that the policy caused the constitutional violation" alleged. Id. at 584 (citations omitted). "Policy is made when a decision-maker possessing final authority to establish . . . policy with respect to the action issues an official proclamation, policy or edict." Miller v. Corr. Med. Sys., 802 F.Supp. 1126, 1132 (D.Del. 1992) (citations omitted). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." Id. (citations omitted).

The plaintiff alleges that CMS should be liable for failure to supervise its employees. (Am. Compl. at 4.) "To hold a supervisor liable under Section 1983 for failure to supervise properly, 'the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1)

8

the existing policy or practice created an unreasonable risk of injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice.'" <u>Hagan v. Rogers</u>, No. 06-4491, 2009 WL 1851039, at *5 (D.N.J. June 24, 2009) (citing <u>Boyd v. Bergen County Jail</u>, No. 07-769, 2007 WL 1695736, at *2 (D.N.J. June 7, 2007)).

The plaintiff here has failed to sufficiently allege facts that CMS, in its supervisory capacity, violated his Eighth Amendment rights. He failed to articulate any policy and failed to show any awareness on the part of CMS that its employees might have deprived him of his rights. He states that CMS "knew or should have know[n]" that he was not receiving proper treatment. (Pl. Br. at 2.) Further, any claims regarding the plaintiff's psychiatric treatment would be irrelevant to CMS as CMS stopped providing mental health services in 2004. As such, CMS cannot be held liable and is entitled to summary judgment.

Even if the plaintiff adequately alleged a CMS policy that deprived him of his rights, the Court would still grant summary judgment in favor of CMS because of the plaintiff's failure to exhaust his administrative remedies. The plaintiff alleges that he believed any grievances should be discussed at weekly unit meetings. (Pl. Br. at 7.) The plaintiff, however, has clearly demonstrated an ability to utilize the administrative grievance

9

procedures within NJSP.  (CMS Br. at 4-7.)  Between 2005 and 2008, the plaintiff filed over thirty inmate request forms and administrative remedy forms.  (Id.)  In February and March 2008, the plaintiff submitted two inmate request forms regarding his mental health care.  (Id. at 8.)  CMS was not responsible for mental health care in 2008.  Further, the plaintiff filed a request form in May 2007 regarding the crushing of his medicine.  (Dkt. entry no. 69, Ex. 1.)  The plaintiff did not appeal the response from prison staff to this request form.  (Id.)  As such, the plaintiff only filed one administrative request regarding his medical treatment provided by CMS.  He failed to appeal the staff's response to this request, thereby failing to exhaust his remedies.[3]

## CONCLUSION

For the reasons stated supra, the Court will grant the motion by the defendant CMS for summary judgment.  The Court will issue an appropriate order and judgment.

                                            s/Mary L. Cooper
                                            **MARY L. COOPER**
                                            United States District Judge

Dated:    January 22, 2010

---

[3] CMS apparently continued to seek to depose the plaintiff, even though its motion for summary judgment was pending.  (See dkt. entry no. 85, 1-20-10 Order of Mag. Judge (noting CMS's request).)  That request has been granted.  (Id.)  However, there is nothing that could be raised in such a deposition that would change the determination here.